Owen B. Walsh, Esq. Informal Opinion County Attorney No. 97-17 County of Nassau Nassau County Executive Building One West Street Mineola, N Y 11501-4820
Dear Mr. Walsh:
You have requested an opinion of the Attorney General regarding whether a person seeking admission to a State-licensed nursing home may be required to execute a power of attorney, a durable power of attorney or a springing durable power of attorney as a condition of admission to the facility. Under the facts presented, upon the resident's incapacity the durable or springing power of attorney would give the facility's administrator broad endorsement and negotiation powers over the resident's social security[1] Since your inquiry only makes a general reference to "social security benefits", we have assumed that you are alluding to Federal old-age and SSI benefits, the two most common non-medical Federal social security assistance programs. Nonetheless, we believe that the analysis employed in this opinion would apply regardless of which Federal or State social security program is actually at issue. and retirement benefit checks. A power of attorney or durable power of attorney would give the administrator these powers while the resident is competent.
Title 15 of the General Obligations Law authorizes a principal to invest an agent with a power of attorney, including one that will survive even if the principal should become incapacitated or otherwise disabled. See, General Obligations Law §§ 5-1501, et seq.General Obligations Law § 5-1501 sets forth a statutory short form of the general power of attorney. Section 5-1505 allows for the creation of a durable power of attorney, which survives the principal's subsequent disability or incompetence. Section 5-1506 provides for a "springing" durable power of attorney which takes effect at a future time or upon the occurrence of a specified contingency, including but not limited to the subsequent incapacity of the principal.
You indicate that some administrators of long-term residential care facilities wish to have their residents execute powers of attorney at the time of their admission. Your letter suggests that the purpose of requiring incoming residents to execute such instruments would be to give the home administrator broad powers with respect to endorsing and negotiating social security and/or retirement benefit checks to offset the nursing home charges incurred.
We conclude that the use of any form of power of attorney in this manner is inconsistent with Federal and State law and regulations, and that neither the language nor the legislative history of General Obligations Law Title 15 permits the conclusion that a power of attorney was intended to be used in this manner. However, on a strictly limited and controlled basis, under Federal law a nursing home may be designated by the United States Social Security Administration (SSA) to receive certain social security benefits on behalf of a resident, and under State law and regulations a guardian may be appointed with authority to distribute benefits on behalf of an incompetent resident.
Federal law permits a nursing home facility to make an application to the SSA for the appointment of a "representative payee" on behalf of a resident beneficiary, thereby allowing a third party to receive SSA benefits on a beneficiary's behalf. Regarding Federal old-age, survivors, and disability insurance benefits, the Social Security Act provides that:
 If the Commissioner of Social Security determines that the interest of any individual under this title [42 U.S.C. § 401 et seq.] would be served thereby, certification of payment of such individual's benefit under this title [ 42 U.S.C. § 401 et seq.] may be made, regardless of the legal competency or incompetency of the individual, either for direct payment to the individual, or for his or her use or benefit, to another individual, or an organization, with respect to whom the requirements [listed below] have been met (hereinafter in this subsection referred to as the individual's "representative payee").
42 U.S.C. § 405(j)(1)(A). The provisions of the Social Security Act regarding SSI benefits are substantively identical. See,42 U.S.C. § 1383(a)(2)(A)(ii)(I).
The SSA will appoint a representative payee when it appears to be in the interests of the beneficiary. 20 C.F.R. § 416.601(a), 416.610(a). Although it is the policy of the SSA to provide every beneficiary with the opportunity to manage his or her own benefits, it recognizes that some may be unable to do so due to a mental or physical condition.20 C.F.R. § 416.601(b)(1). Under such circumstances, the SSA may determine that the interests of the beneficiary would be better served if it certifies the payment of benefits to another person or organization as a representative payee. 20 C.F.R. § 416.601(a). Once appointed, a representative payee will directly receive and manage an incompetent beneficiary's social security benefits.42 U.S.C. § 1383(a)(2)(A)(ii)(I); 20 C.F.R. § 416.635(a).
The representative payee designation process contains a number of procedural safeguards devised to protect the interests and financial well-being of the incompetent beneficiary. In determining whether to appoint a representative payee, the SSA will take into consideration any court determinations of competency (20 C.F.R. § 416.615[a]), medical evidence (20 C.F.R. § 416.615[b]), or statements of relatives, friends and other people in a position to know and observe the beneficiary (20 C.F.R. § 416.615[c]). The SSA also employs detailed selection criteria to determine who would best serve the interests of the beneficiary as representative payee. See, e.g.,42 U.S.C. § 1383(a)(2)(B)(I) (requiring a thorough investigation of prospective representative payees), and 20 C.F.R. § 416.620 (requiring consideration of the relationship of the prospective payee to the beneficiary, and whether the prospective payee is in a position to provide for the needs of the beneficiary).
As an adjunct to these selection requirements, the SSA has established an order of preferences it uses in choosing among prospective representative payees. See, 20 C.F.R. § 416.621(a)(1)-(5). Nursing home facilities are explicitly included in the hierarchy of persons or organizations that may be named as representative payees (20 C.F.R. § 416.621[a][3] and [4]).
Once so designated, representative payees must adhere to a number of safeguards built into the Federal regulations. See, e.g.,20 C.F.R. § 416.635 (outlining the responsibilities of a representative payee); § 416.640 (delineating how benefits may and may not be used by the representative payee); § 416.640a (establishing limits on compensation for service as a representative payee); and § 416.665 (fiscal accountability requirements). If the SSA or a court of competent jurisdiction determines that a representative payee has misused any benefits paid out under the representative payee process, the SSA is authorized to promptly revoke certification for payment of benefits to such representative payee and certify payment to an alternate representative payee or to the individual.42 U.S.C. § 405(j)(1)(A); see also, 20 C.F.R. § 416.650 (removal of representative payee status).
The Federal statute and accompanying regulations establish the appropriate procedure for designation of a third-party payee for receipt of Social Security Act benefits. In our view, the power of attorney provisions (all forms) contained within the General Obligations Law may not be substituted for the requirements of 42 U.S.C. § 405 and1383(a)(2) to give a nursing home endorsement and negotiation powers over social security and SSI benefits. To receive SSA benefits on behalf of a beneficiary, nursing homes must submit to the SSA's representative payee process.
With regard to other assets of the resident, including State retirement benefits, we believe that mandatory execution of any form of power of attorney naming a facility administrator as agent for the management of those assets would be contrary to Federal and State law and regulations. Federal law contains detailed provisions directing how persons or organizations are to manage the finances of a nursing home resident.See, 42 U.S.C. § 1395i-3. State regulations contain similar provisions. See, 10 NYCRR Part 415.
Both State and Federal regulations contemplate voluntaryagreements by residents authorizing nursing homes to manage their finances, subject to rigid limitations and safeguards designed to protect the resident. See, 10 NYCRR §§ 415.3(g)(1), 415.26(h)(5); 42 U.S.C. § 1395i-3(c)(6)(A) and (B). Significantly, the Federal and State regulations direct reporting to the resident or his or her legal representative.42 U.S.C. § 1395i-3(c)(6)(B)(ii); 10 NYCRR § 415.26(h)(5)(ii)(b).
Under Federal law, a nursing home "may not requireresidents to deposit their personal funds with the facility". 42 U.S.C. § 1395i-3(c)(6)(A) (emphasis added). If a resident does authorize a nursing home facility to manage his or her personal funds, it must be done in accordance with Federal regulations:
 The facility must deposit any amount of personal funds in excess of $100 with respect to a resident in an interest bearing account (or accounts) that is separate from any of the facility's operating accounts and credits [sic] all interest earned on such separate account to such account. With respect to any other personal funds, the facility must maintain such funds in a non-interest bearing account or petty cash fund.
42 U.S.C. § 1395i-3(c)(6)(B)(i). In addition, the facility "must assure a full and complete separate accounting of each such resident's personal funds", and must provide the resident or the resident's representative payee with reasonable access to such records.42 U.S.C. § 1395i-3(c)(6)(B)(ii). The facility must also purchase a surety bond or otherwise assure the security of the resident's funds (42 U.S.C. § 1395i-3[c][6][C]), and adhere to statutory limits on the types and amounts of charges it may impose against the personal funds of the resident (42 U.S.C. § 1395i-3[c][6][D]).
State nursing home regulations have been similarly crafted to guide and limit a nursing home's access to, and management authority over a resident's personal finances. See, Public Health Law §2803-c; 10 NYCRR §§ 415.3(g)(1), 415.26(h)(5)(I)(a) and (h)(5)(ii). The regulations specifically prohibit homes from requiring residents to deposit their funds with the facility. 10 NYCRR § 415.3(g)(1). A facility is forbidden from entering into any contract or agreement with the resident for either the life care of the resident (see, 10 NYCRR § 415.26[h][2]), or accepting prepayment for basic services exceeding three months (10 NYCRR § 415.26[i][1][r]). Nor is a facility permitted to "charge, solicit, accept or receive . . . any gift, money, donation or other consideration as a precondition ofadmission, expedited admission, or continued stay in the facility". 10 NYCRR § 415.3(b)(2) (emphasis added); see also, Public Health Law § 2805-f(4)(b)(i).
These Federal and State statutory and regulatory provisions do not permit a nursing home to condition admission upon an agreement by the prospective resident to authorize the home to manage his or her finances. Nor do they contemplate the required granting of any form of power of attorney to the facility. Instead, they authorize limited voluntary agreements for the management of patient finances with strict reporting requirements to the patient or the patient's legal representative.
Powers of attorney are usually given to a trusted family member, friend or advisor, and in the absence of such a person, a bonded attorney, accountant or a bank trust department is usually selected. A power of attorney vests a fiduciary responsibility with the agent, and regardless of who is ultimately chosen, that agent has a duty to act in the principal's best interests. Northeast v. Wellington Adv., 82 N.Y.2d 158,163-164 (1993). Under the relationship created between a principal and his or her agent, the agent is bound to exercise the utmost good faith toward the principal. Id.
We conclude, under the facts presented, that the principal/agent relationship under a power of attorney between a creditor nursing home facility and a resident would be inappropriate. Any form of power of attorney, where the object is to protect the financial interests of the nursing home, rather than create a fiduciary relationship to represent the interests of the resident, is inconsistent with the purpose of a power of attorney.
Nursing homes are not without other means to ensure reimbursement for their services by residents. See, e.g., 42 U.S.C. § 1396r; 10 NYCRR § 415.3(b)(6)-(8); cf. 10 NYCRR § 415.3(h)(1)(I)(b). For example, a nursing home administrator may petition the court to appoint a guardian to oversee the personal or property management needs of an incapacitated resident. See, Mental Hygiene Law Article 81. The powers of a court-appointed guardian may include the authority to distribute State retirement benefits on behalf of the incapacitated beneficiary. See, Mental Hygiene Law § 81.03(g). Comparable to the process of appointing a representative payee (a guardian may be appointed as representative payee for social security purposes [supra]), Article 81 guardianship is designed to protect the financial well-being and due process rights of the incapacitated resident. See, e.g., Mental Hygiene Law §§ 81.02 (standards for appointment of a guardian), 81.09 (appointment of a court evaluator) and 81.35 (removal of a guardian). Earlier, we referenced authority under Federal law for the designation of a nursing home administrator as a representative payee.
We conclude that a policy of requiring incoming residents to execute any form of power of attorney naming the nursing home administrator as agent for the management of social security and retirement benefits is inconsistent with Federal and State law and regulations. Any form of power of attorney vests a fiduciary responsibility with the agent under which the agent must act in the principal's best interests. The object of the power of attorney, as presented in your letter, is to protect the interests of the nursing home facility, as a creditor, an object inconsistent with the purpose of a power of attorney to protect the interests of the resident. Therefore, the granting of a power of attorney to a nursing home administrator, for the benefit of the nursing home, is inappropriate.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE
Assistant Attorney General
In Charge of Opinions
[1] The Social Security Act of 1935 (42 U.S.C. § 301 et seq.), is the collective name for a series of Federal social welfare measures undertaken in cooperation with the states. The Act, in various subchapters, provides for such benefit programs as Federal old-age benefits for insured individuals (see, 42 U.S.C. § 402[a]), survivors' benefits (see, 42 U.S.C. § 402[b]-[h]), disability insurance benefits (see, 42 U.S.C. § 423), and assistance for the needy aged, blind and disabled, also known as supplemental security income (SSI) (see, 42 U.S.C. § 1381, et seq.).